CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 23 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ISRAEL RAY COOPER, | ) | CASE NO. 7:16CV00578 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| AIMEE DUNCAN, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Israel Ray Cooper, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials retaliated against him and violated his due process rights. After review of the complaint, the court concludes that the complaint must be summarily dismissed without prejudice and the pending motions dismissed as moot.

## Background

Cooper is an inmate at Red Onion State Prison ("Red Onion"). On May 18, 2016, Cooper used the "PREA" sexual abuse hotline[1] to report that during his 90-day review, Lt. Gilbert relied on false evidence to recommend that Cooper remain in segregation. On May 24, 2016, Duncan wrote a disciplinary charge against Cooper for unauthorized use or abuse of the telephone. The disciplinary report states that Duncan wrote the charge based on an email received from the state-wide PREA coordinator that day, advising her that Cooper's May 18 report was "non-PREA." (Pl.'s Ex. C, at 7, ECF No. 1-1.) Cooper alleges that in writing the charge, Duncan committed violations of PREA procedures and retaliated against him.

On June 23, 2016, Defendant Mullins conducted the disciplinary hearing on Cooper's charge for unauthorized use of the phone. Cooper alleges that the charge itself was not properly

---

[1] The PREA sexual abuse hotline is one facet of Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 038.3, a set of Prison Rape Elimination Act ("PREA") procedures adopted in response to a federal law by that title, 42 U.S.C. §§ 15601-15609.
See http://www.vadoc.virginia.gov/about/procedures (last visited May 16, 2017).

investigated or authorized by VDOC policies. He also contends that Mullins "fail[ed] to properly allow facts [or witnesses] to be presented" and was not impartial when he found Cooper guilty of this offense based on the email Duncan had received from the PREA coordinator. The penalty Mullins imposed was loss of telephone privileges for 30 days (from June 13 to July 12, 2016).

On August 14, 2016, Cooper wrote a PREA grievance, complaining that Inmate Cashwell had threatened for several days to tell other inmates that Cooper was convicted of sex offenses with children and to arrange to cell with him so they could have sex. Cooper also claimed that Cashwell had personal information about him, purportedly provided by prison officials. Duncan issued a Level I response to Cooper's PREA grievance on September 13, 2016, stating that Duncan had reviewed these allegations and found insufficient evidence to substantiate them. Duncan's finding was affirmed on appeal by defendant Elam. Cooper alleges that these proceedings did not comport with PREA procedures. He complains that Duncan failed to interview him, Cashwell, or another witness, and ruled the grievance unfounded, and that as a result, Cashwell continued to sexually harass Cooper.

On September 14, 2016, Cooper called the PREA hotline to report Duncan's PREA violations and Cashwell's harassment. Investigator Bentley took Cooper's statement on September 23, 2016, and took a note Cashwell had allegedly written, declaring his love for Cooper. In a letter dated September 27, 2016, Investigator Fannin notified Cooper that the investigation into his PREA complaint about Cashwell had proved to be unsubstantiated. Neither Fannin nor Bentley interviewed the other witnesses Cooper had identified for them.

Liberally construed, Cooper's § 1983 complaint alleges the following claims for relief: (1) In May 2016, Duncan violated PREA procedures and brought a retaliatory disciplinary

charge against Cooper that kept him in segregation; (2) in September 2016, Duncan, Fannin, and Bentley did not conduct proper PREA investigations and failed to protect Cooper from Cashwell, in violation of the Eighth Amendment; and (3) Mullins violated Cooper's due process rights during the disciplinary proceedings in September 2016. As relief, Cooper seeks an interlocutory injunction directing that Cashwell be kept away from him, monetary damages, and expungement of the disciplinary convictions.

## Discussion

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996). To state a colorable claim of retaliation, Cooper must allege facts supporting a reasonable inference that the defendant took the alleged retaliatory action because of plaintiff's exercise of some constitutionally protected right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

3

Bare assertions of retaliation, without supporting facts, do not establish a claim of constitutional dimension. Id. at 74-75.

Cooper's submitted exhibits indicate that Duncan filed the disciplinary charge in May 2016 in response to the PREA coordinator's email stating that Cooper had committed the charged misconduct: unauthorized use of the telephone. Specifically, the charge stated that it was based on the coordinator's determination that Cooper had placed a PREA call about a non-PREA issue. Cooper disagrees with the coordinator's finding, believes his call was covered by PREA, and characterizes Duncan's actions as retaliatory. This bare and conclusory assertion of retaliation is not sufficient to support a § 1983 claim, however. Adams, 40 F.3d at 74. Cooper merely alleges without any factual support that Duncan was motivated to bring the charge, not to discipline him for his designated misuse of the PREA call system, but to retaliate against him for the particular statements he made in his non-PREA call (i.e. that he did not like Gilbert's findings at his classification review). Because the mere labeling of an action as retaliation cannot support an actionable § 1983 claim,[2] the court will summarily dismiss Cooper's retaliation claim pursuant to § 1915A(b)(1). See Twombly, 550 U.S. at 555 (holding that pleading presenting merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do" to state an actionable civil claim).

Cooper also has stated no viable § 1983 claim against any prison officials for violating PREA procedures. This court and others have found no basis in law for a private cause of action under § 1983 to enforce an alleged PREA violation. Chapman v. Willis, No. 7:12-CV-00389,

---

[2] This court notes that Cooper's conclusory retaliation claim, constructed entirely of unsupported assertions and not facts, is clearly distinguishable from the inmate plaintiff's claim at issue in Booker v. S.C. Dep't of Corr., No. 15-7679, __F.3d__, 2017 WL 1531576, at *5 (4th Cir. Apr. 28, 2017) (finding an actionable retaliation claim stated by inmate's "detailed factual allegations" that a mailroom supervisor brought a retaliatory disciplinary charge against him for physically threatening her, after he said he would file suit or seek criminal charges, if he found that someone had tampered with his mail again).

4

2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) (Kiser, J.) (citing other cases). "Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act." Id. Thus, under § 1915A(b)(1), the court must summarily dismiss Cooper's § 1983 claim based on officers' alleged violation of their duties under the state's PREA procedures.

Next, Cooper complains that Duncan and the investigators failed to protect him from inmate Cashwell's verbal sexual harassment and taunting. While prison officials must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), "[t]o the extent that [prison living] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

> The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment.

Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Thus, Cooper must prove, objectively, that he suffered a serious injury as a result of officials' failure to protect him. Cooper has not stated facts making any such showing. At the most, he alleges that because officials found his PREA grievances about Cashwell to be unsubstantiated, he remained in a cell near Cashwell for several more weeks and Cashwell continued the undesirable behavior. Because Cooper fails to show that defendants' actions or omissions resulted in any serious physical or mental injury, the court will summarily dismiss his Eighth Amendment claim under § 1915A(b)(1).

Finally, Cooper asserts that Mullins did not provide constitutionally required procedural protections during the June 2016 disciplinary proceedings. "To state a procedural due process

5

violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). As a convicted prisoner, Cooper does not have an inherent, constitutionally protected liberty interest in avoiding penalties for prison disciplinary infractions. Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974). A state-created liberty interest may exist only if Cooper (a) points to "a basis for an interest or expectation in state regulations" in avoiding a particular penalty, Prieto, 780 F.3d at 250; and (b) shows that the penalty "impose[d] atypical and significant hardship . . . in relation to the ordinary incidents of prison life," or will "inevitably affect the duration" of his confinement. Sandin v. Connor, 515 U.S. 472, 484, 487 (1995). Because "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," use of a temporary withholding of privileges as "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin, 515 U.S. at 486 (internal quotation marks and citations omitted). Thus, the temporary loss of telephone privileges—the disciplinary penalty that Mullins imposed on Cooper—was not the type of atypical hardship required to create a liberty interest that would trigger federal due process protections under the rubric in Sandin. Nor has Cooper shown that this penalty inevitably affected the length of his confinement so as to trigger a protected liberty interest. Id. at 487. Without stating facts to establish a federal liberty interest involved in the challenged disciplinary proceedings, Cooper has no actionable claim that he was deprived of a federal right to any particular procedural protections in these disciplinary proceedings.

Cooper also has no federal claim that Duncan or Mullins violated VDOC procedures, such as filing an unauthorized charge or failing to require specific documentation. State

officials' failure to abide by state procedural regulations is not a federal due process issue, and is, therefore, not actionable under § 1983. Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."). Therefore, the court will summarily dismiss Cooper's due process claims under § 1915A(b)(1).

## Conclusion

For the reasons stated, the court will summarily dismiss Cooper's § 1983 complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim. Since filing the complaint, Cooper has filed two motions to amend to add other claims and defendants; a motion for preliminary injunctive relief; motions and requests regarding discovery; and a motion for summary judgment. None of these submissions correct the legal or factual deficiencies noted in the court's discussion. Accordingly, the court will deny these motions as futile. An appropriate order will issue this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 23rd day of May, 2017.

_____
Chief United States District Judge